UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CECIL ROBY,<br><br>                    Plaintiff,<br><br>v.<br><br>CITY OF SPOKANE, WASHINGTON, DANIEL WATERS, ANNE KIRKPATRICK, RONALD VAN TASSEL, JOHN GATELY, and DANIEL WILSON<br><br>                    Defendants. | No. CV-08 -139-JLQ<br><br>**MEMORANDUM OPINION AND ORDER GRANTING CITY OF SPOKANE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

On July 17, 2009, the court heard oral argument on the City Defendants' (City of Spokane, Daniel Waters, Anne Kirkpatrick, Ronald Van Tassel, and John Gately) Motion for Dismissal/Summary Judgment (Ct. Rec. 33). Richard Wall appeared on behalf of the Plaintiff. Ellen O'Hara appeared for the City Defendants. Timothy Cronin appeared on behalf of Defendant Wilson. The court took the motions under advisement.      The Motion for Dismissal/Summary Judgment seeks dismissal of the Plaintiff's First, Second, Third, Fourth, and Sixth causes of action pursuant to Fed. R. Civ. P. 12 and 56. Plaintiff has conceded he possesses insufficient evidence to sustain any claims against Defendants Van Tassel and Kirkpatrick. Ct. Rec. 65, 20:2-14.

1. Factual Background

In the early morning hours of March 17, 2007, Plaintiff Cecil Roby ("Roby"), his wife Catherine, and some friends were walking towards the corner of Division Street and Spokane Falls Boulevard when Mr. Roby claims he grabbed his wife and pulled her back

onto the sidewalk as she had dangerously begun to cross Division Street without looking to ascertain oncoming traffic.  At this time, Mr. Roby claims Defendant Daniel Wilson ("Wilson"), a stranger and an off-duty Spokane firefighter in an allegedly intoxicated state, struck him on the head as he was turning around, saying something to the effect of "[d]on't ever hit your wife."  Mr. Roby was knocked to the street.  He and his witnesses claim Defendant Wilson continued to strike him forcefully with his closed fist and/or a small weapon.  Mr. Roby claims he never struck Defendant Wilson or provoked the attack.

One of Mr. Roby's friends separated the two men and helped Mr. Roby retreat from Wilson.   Mr. Roby was bleeding from his nose and face.  His shirt was soaked in blood as he attempted to staunch the flow.  Officers Waters and Gately, Spokane policemen, observed Defendant Wilson being pushed away by Mr. Roby's friends and subsequently began to question witnesses.  Officers Gately and Waters claim they overheard Mrs. Roby saying "[h]e didn't hit me, he just pushed me."  Defendant Wilson told police that he saw Plaintiff push his wife, and tell her "[y]ou made a mistake tonight."  Defendants Gately and Waters claim Mrs. Roby, who also appeared intoxicated, demonstrated how Mr. Roby pushed her by pushing the shoulder of one of the officers.

 Defendant Wilson claimed to the police officers that he told Mr. Roby to stop pushing his wife, that Mr. Roby then threw a  punch at him, but missed, and that he, Defendant Wilson, then struck Mr. Roby a single time in the face.  Officers Gately and Waters claim they did not then know Defendant Wilson and were unaware of his occupation as a Spokane fireman, but noted that he appeared to be intoxicated.  The officers claim they first learned that Wilson was a Spokane fireman when they asked for his identification, but they claim that the nature of Wilson's employment played no role in their decision to arrest Roby, but not Wilson.

A friend of Mr. Roby's, Howard Brutschy, told one of  the Spokane policemen that Defendant Wilson punched Mr. Roby multiple times with his closed fist, and that there

could have been an object in Defendant Wilson's hand as he was striking Mr. Roby. Officer Gately claims Mr. Brutschy changed his story several times, saying one time that he saw nothing, then that he saw Defendant Wilson hit Mr. Roby with a billy club, and then that he saw just one punch. Another friend of Mr. Roby's, Steven Donahue, claims Defendant Wilson struck Mr. Roby fifteen or twenty times, and that he told this to a Spokane policeman at the scene.

Mr. Roby's wife states she repeatedly told Officer Waters that her husband did not hit her, and demonstrated to him how Mr. Roby had pulled her back onto the sidewalk. Mrs. Roby never told any officer that she was harmed or offended in any manner. Officer Gately claims that Mrs. Roby continually described the contact her husband made with her as a "push."

Mr. Roby states that he was immediately informed that he was going to be arrested for domestic violence assault. Defendant Gately claims Mr. Roby angrily told his wife that "[t]his was all her fault." Mr. Roby claims he was not asked or allowed to tell his side of the story to the police officers and that he observed a number of Spokane police officers standing and laughing with Defendant Wilson. Mr. Roby claims the officers were very aggressive towards him, telling him it was "clear" that there was probable cause to arrest him for domestic violence assault.

Mr. Roby claims Defendants Gately and Waters made no attempt to document or determine the extent of his injuries other than to note that his face was bleeding. Mr. Roby was taken to a hospital for treatment, then taken to jail and arrested. Mr. Roby claims that prior to being taken to jail Officer Gately told him Defendant Wilson struck him only one time, Mr. Roby's and other witnesses assertions that he was struck multiple times notwithstanding. Officer Gately stated that Mr. Roby was argumentative and appeared highly intoxicated. At jail, Mr. Roby claims he asked the officers to place his blood-soaked shirt in an evidence bag untouched. Mr. Roby states that the shirt was later returned to him, washed of all traces of blood.

1    Mr. Roby claims he sustained severe injuries, including 20% hearing loss as a

2  result of the attack and that the nature and extent of his injuries suggest he was probably

3  struck many times by a closed first, or at least twice with a weapon.  Mr. Roby claims

4  that Spokane police and firefighters have frequent contact during the course of

5  performing their duties, and that Officer Waters knows a number of firefighters

6  personally.

7    Officers Gately and Waters claim that Mr. Roby's arrest was based on their

8  determination that he was the primary aggressor in the incident with his wife, including

9  his demeanor and statements to his wife and the statements of other witnesses.  They

10 claim that Mr. Roby's fight with Defendant Wilson played "zero role" in their

11 determination to arrest Mr. Roby.  The police officers claim their decision not to arrest

12 Defendant Wilson was based on Officers Gately and Waters' determination that his claim

13 of self-defense was credible.

14    In his Complaint against the City Defendants (Ct. Rec. 1), Plaintiff has alleged 1) a

15 violation of his constitutional right not to be subject to arrest without probable cause; 2) a

16 state law claim for false arrest and imprisonment; 3) a violation of his constitutional due

17 process rights through arbitrary and capricious government action; 4) a constitutional

18 violation by Defendant Anne Kirkpatrick, Spokane Police Chief, for failure to adequately

19 train and supervise Spokane Police Officers; 5) a state law assault and battery claim

20 against Defendant Daniel Wilson; and 6) a claim of *respondeat superior* liability against

21 the City of Spokane on all federal and state claims.

22 2.  Standard of Review

23    The City Defendants filed their Motion For Dismissal pursuant to Fed. R. Civ. P.

24 12(b)(6) and 12(c), or, in the alternative, for Summary Judgment pursuant to Fed. R. Civ.

25 P. 56.  Plaintiff has withdrawn all claims against Defendants Van Tassel and Kirkpatrick.

26 His allegations against the remaining Defendants, accepted as true as required,  state a

27 claim upon which relief can be granted and are sufficient to defeat the Motion For

28 Dismissal pursuant to Fed. R. Civ. P. 12(b)(6).  Pursuant to Fed. R. Civ. P. 12©, and as

requested by the City Defendants, the Motion To Dismiss is converted to a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.  *See* Fed. R. Civ. P. 12(d); *U.S. v. Duffy*, 550 F.2d 533, 534 n. 2 (9th Cir. 1977)("The government filed a motion for judgment on the pleadings, Rule 12©, Fed.R.Civ.P., which the trial court, considering both the pleadings and the affidavits filed by each party, properly treated as a motion for summary judgment").

Summary judgment is appropriate only when there "is no genuine issue as to any material fact and...the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.   A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 243 (1986).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e). The non-movant must, however, do more than show that there is some abstract doubt as to the material facts.  He must present significant probative evidence in support of his opposition to the Motion For Summary Judgment in order to defeat the Motion. *Anderson*, 477 U.S. at 248.

3.  Discussion

A.  *De Facto* Policy Within Spokane Police Department

City Defendants first move for summary judgment of dismissal of all claims based on Mr. Roby's claim of an alleged *de facto* policy of favoritism by Spokane Policemen. Ct. Rec. 35, 7:23-25.  In his Complaint, Mr. Roby makes the following assertion:

> *On information and belief*, the officer's failure to arrest or charge defendant Wilson and the arrest and charging of Plaintiff was done as part of a *de facto* policy within the Spokane Police Department of giving preferential treatment to firefighters employed by the City of Spokane.  Plaintiff was arrested and charged with domestic violence solely for the purpose of protecting defendant Wilson from Criminal or civil liability for the assault on Plaintiff.  Further, defendants Gately,

ORDER - 5

> Waters and Van Tassel prepared and filed sworn reports concerning the incident that contained statements that the officers knew to be false. The filing of such reports containing false statements was also done for the purpose of protecting defendants [sic] Wilson and to protect the officers from and [sic] charges of misconduct.

Ct. Rec. 1, ¶ 13.

The allegation of an alleged favoritism policy is not a cause of action in and of itself; rather it constitutes circumstantial evidence Mr. Roby is using to try to prove lack of probable cause for his arrest and ulterior motivations on the part of the arresting officers for his arrest, but not Wilson. While Mr. Roby submits no direct evidence of the existence of such a policy, he does offer circumstantial evidence of favoritism in this specific case, such as his statement that he observed his arresting officers laughing with Defendant Wilson (Ct. Rec. 70, ¶ 6), and that Roby was the only party arrested despite his obvious and extensive physical injuries (*Id.*). However, the Plaintiff has voluntarily dismissed his claim of the existence of an ongoing policy of favoritism and has limited his claim to his specific circumstances including a claim that Defendant Wilson's City of Spokane employment as a firefighter triggered Roby's arrest for alleged domestic violence in an alleged effort by the police officers to protect Wilson from any Roby claim of assault.

B.  Fourth Amendment Violation - Unlawful Arrest

Mr. Roby's First cause of action is a 28 U.S.C. § 1983 claim asserting that his Fourth Amendment right to be free from unlawful arrest was violated. "To state a section 1983 claim, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981).

It is undisputed that all City Defendants were acting under the color of state law at the time of the incident in question. Thus, the remaining question is whether the arresting officers violated Mr. Roby's constitutional right to be free from unlawful arrest. "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has

ORDER - 6

been or is being committed by the person being arrested." *Rodis v. City of San Francisco*, 558 F.3d 964, 969 (9th Cir. 2009)(citations omitted).  While conclusive evidence of guilt is not necessary to establish probable cause, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough." *Ramirez v. City of Buena Park*, 560 F.3d 1012, 1023 (9th Cir. 2009)(citations omitted).

Mr. Roby was arrested for domestic violence fourth degree assault, which has as elements 1) an assault, 2) not amounting to assault in the first, second, or third degree. RCW 9A.36.041.  Three definitions of criminal assault have been recognized in Washington: (1) an attempt, with unlawful force, to inflict bodily injury upon another; (2) an unlawful touching with criminal intent; and (3) putting another in apprehension of harm whether or not the actor intends to inflict or is incapable of inflicting that harm. *State v. Krup,* 36 Wn.App. 454, 458-460 (1984).  Additionally, intent is a court-implied element of assault in the fourth degree.  *State v. Walden*, 67 Wn.App. 891, 894 (1992). "A touching may be unlawful because it was neither legally consented to nor otherwise privileged, and was either harmful or offensive."  *State v. Garcia,* 20 Wn.App. 401, 403 (1978). Further, as established by, *inter alia,* the affidavit of Chief of Police Anne Kirkpatrick and Officer John Gately, the law of the state of Washington, R.C.W. 10.99.030,  provides in part that "When a peace officer responds to a domestic violence call and has probable cause to believe that a crime has been committed, the peace officer **shall** exercise arrest powers." There is no showing by the Plaintiff that the mandate of this statute was not followed by Spokane Police Officers on an ongoing basis.

The court finds that the undisputed evidence establishes that Defendants Gately and Waters had probable cause to arrest Mr. Roby for fourth degree assault. Thus,  he was not deprived of his Fourth Amendment right to be free from unlawful arrest. Evidence sufficient to establish probable cause at the scene need not be sufficient to sustain a conviction pursuant to *Ramirez*.  The evidence the officers relied upon to arrest Mr. Roby would lead a reasonable person to believe domestic violence assault had been committed.  Officer Gately heard Mrs. Roby say to Defendant Wilson that "[h]e didn't hit

1   me, he just pushed me." Ct. Rec. 39, ¶ 7.  Mrs. Roby told Officer Gately directly that

2   "[m]y husband did not hit me, he just pushed me." Ct. Rec. 39, ¶ 8.  Mrs. Roby

3   demonstrated the contact to Officer Gately by pushing his shoulder.  *Id.*  Defendant

4   Wilson, a witness to the event, told Officer Gately that Mr. Roby pushed his wife, telling

5   her that she "made a mistake tonight." Ct. Rec. 39, ¶ 10.  Officer Gately talked to Mrs.

6   Roby further, and she reiterated that Mr. Roby pushed her, though maintaining that he did

7   not hit her.  Ct. Rec. 39, ¶ 9.  Both Mr. and Mrs. Roby appeared to Officer Gately to be

8   intoxicated.  Ct. Rec. 39, ¶ 8; ¶ 16.  Officers Waters and Gately observed Mr. Roby walk

9   up to Mrs. Roby and say "[t]his is all your fault," causing her to cry.  Ct. Rec. 40, ¶ 15;

10  Ct. Rec. 39, ¶ 12.  Both Officers Gately and Waters concluded that Mr. Roby's demeanor

11  was aggressive, and that he was angry at his wife.  Ct. Rec. 40, ¶ 19; Ct. Rec. 39, ¶ 20.

12      All of the foregoing evidence, even when construed in a light most favorable to

13  Mr. Roby, indicates that the officers in question had probable cause to believe that Mr.

14  Roby had unlawfully touched his wife and/or placed her in apprehension of harm.  It is

15  undisputed that he made some form of physical contact with her, and Mr. Roby yelled at

16  his wife on more than one occasion.  Furthermore, Mr. Roby was intoxicated.  A

17  reasonable person could take the connotation of the word "push," which Mrs. Roby used

18  to describe what her husband did to her, to mean some form of aggressive, unwanted

19  contact, particularly when the contact is initiated by a male involving a female victim.

20      Mr. Roby's best argument on his claim of lack of probable cause  revolves around

21  the specific intent element of assault.  "[W]hen specific intent is a required element of the

22  offense, the arresting officer must have probable cause for that element in order to

23  reasonably believe that a crime has occurred." *Gasho v. United States*, 39 F.3d 1420,

24  1428 (9th Cir. 1994).  Mrs. Roby told the police that her husband did not hit her, and that

25  he only pulled her back, maintaining that the police did not seem interested in her story.

26  Ct. Rec. 69, ¶ 6.  Mrs. Roby was neither hurt nor offended by Mr. Roby's actions, and

27  she conveyed this to the police.  Ct. Rec. 69, ¶ 7.  Mr. Roby contends that the only other

28  witness to the alleged assault was Defendant Wilson, who was intoxicated and had just

ORDER - 8

1  beaten him severely, therefore imputing a motive to allege that Mr. Roby assaulted his
2  wife.  Ct. Rec. 65, 13:20-28.
3       Mr. Roby's argument fails for several reasons.  First, assault can be a mere
4  apprehension of harm.  *Krup, supra*.  Even if Defendant Wilson was the only witness to
5  observe physical contact between Mr. and Mrs. Roby, Officers Gately and Waters
6  observed Mr. Roby yelling at his wife, his intoxicated state, and Mrs. Roby's
7  demonstration of physical contact by Mr. Roby.  All of these factors combined
8  to create a situation in which a reasonable person could conclude probable cause existed
9  to arrest Mr. Roby for domestic violence assault.  Secondly, the Officers could have
10  reasonably inferred specific intent from the totality of the evidence.  Mrs. Roby
11  maintained that she was never harmed or offended, but this does not categorically prove
12  that Mr. Roby never, at any point, harbored such intent.  Again, Mr. Roby's intoxication,
13  his contact with his wife, and his yelling at her in an aggressive manner ("This is all your
14  fault;" "You made a big mistake") could lead an officer to reasonably conclude that Mr.
15  Roby had assaulted his wife with the requisite specific intent.
16       Mr. Roby's arguments are all ones that might help prove himself innocent of the
17  charges at trial (the charges against him were dropped), but the court does not find them
18  persuasive in the context of a probable cause analysis.  Pursuant to *Ramirez*, Officers
19  Gately and Waters did not need proof of guilt, but rather were required to meet the lower
20  standard of probable cause under the Washington domestic violence statute. Police
21  officers are required to make decisions based on the facts available to them at the scene in
22  a particular, possibly heated moment in time, and the foregoing evidence is sufficient to
23  show Officers Gately and Waters had probable cause to arrest Mr. Roby.  Accordingly,
24  Mr. Roby has not established that he was denied his Fourth Amendment right to be free
25  from unlawful arrest, and the City Defendants' Motion for Summary Judgment is
26  **GRANTED** with respect to Mr. Roby's First cause of action.
27
28

ORDER - 9

Giving the Plaintiff the benefit of all reasonable inferences from the facts presented the court concludes that probable cause to arrest Mr. Roby existed. The failure of the officers to arrest Mr. Wilson under circumstances which Plaintiff's evidence would arguably establish probable cause for Wilson's arrest does not create an independent cause of action in favor of Roby.  Clearly the failure to arrest a third party cannot constitute a civil rights violation.  It is not disputed that Defendant Wilson struck Roby at least once, and the evidence of Roby's severe injuries suggests he was struck more than once or with a weapon. Defendant Wilson was never arrested, or even issued a citation, let alone detained in any form or fashion.  The City Defendants in their affidavits and briefs have reacted in an exaggerated  manner to Mr. Roby's suggestions of a *de facto* policy of favoritism.  Events such as this could create and perpetuate a public mistrust of law enforcement conduct in dealing with their fellow employees, be they firefighters or policemen who may have committed offenses.  Lay citizens, if they had themselves acted in the manner of Defendant Wilson and Roby, would, more likely than not,  expect the police to arrest both of them, or at a minimum, issue a citation to both parties, not just arrest one party to such a confrontation. Counsel for the Defendants has recognized the problem of the public perception as set forth in the Motion In Limine (C.R. 81 ¶s 3 & 4) seeking to preclude reference to "other police cases in Spokane,"  or "references to other cases against the City of Spokane" based upon allegations of police misconduct or failures.

The foregoing being said, the court recognizes the difficult, sometimes split second decisions police officers in Spokane must make.  Police officers must make those difficult decisions based upon the circumstances existing on the street, rather than after extensive review and post judgment by lawyers and judges based upon hours of review of legal authorities and briefs.  However, favoritism, actual or implied,  by police in any manner to fellow City employees, particularly to those also involved in public safety, could cause the citizenry to lose confidence in the good faith of its police officers. In this case, however, the evidence submitted to the court does not establish that the Roby arrest

ORDER - 10

1  decision of the officers investigating the drunken Roby/Wilson confrontation were solely

2  and proximately based upon favoritism to Wilson.

3  C.  State Law - False Arrest/Imprisonment

4      The City Defendants next move for Summary Judgment as to Mr. Roby's Second

5  cause of action that he was wrongly and without legal justification restrained by the use

6  of physical force and/or the threat thereof.  Ct. Rec. 1, ¶ 18.

7      Under Washington law, probable cause for arrest is a complete defense to an action

8  for false arrest and imprisonment.  *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563

9  (1993).  For the reasons stated *supra*, probable cause existed to arrest Mr. Roby for fourth

10 degree assault domestic violence, and this finding is an absolute bar to his claim of false

11 imprisonment.  Accordingly, the City Defendants' Motion for Summary Judgment is also

12 **GRANTED** with respect to Mr. Roby's Second cause of action.

13 D.  Due Process Violation

14     Mr. Roby's Third cause of action alleges his constitutional due process rights

15 were violated by the City Defendants' alleged arbitrary and capricious conduct in failing

16 to arrest Wilson.  Ct. Rec. 1, ¶ 19. The non-arrest of Defendant Wilson has been

17 discussed, *supra*,  however, Mr. Roby does not have a federal constitutional or state

18 recognized right to require the police to arrest a third party.  For the reasons stated

19 probable cause existed to arrest Mr. Roby for fourth degree assault domestic violence,

20 and the existence of probable cause for his arrest necessarily renders his arrest non-

21 arbitrary or capricious.  The non-arrest of Defendant Wilson does not change the fact that

22 probable cause existed for the arrest of Mr. Roby.  Accordingly, the City Defendants'

23 Motion for Summary Judgment is **GRANTED** with respect to Mr. Roby's Third cause of

24 action.

25 E.  Failure to Train

26     Mr. Roby's Fourth cause of action alleges that Defendant Anne Kirkpatrick, Chief

27 of the Spokane Police, failed to adequately train or supervise officers of the Spokane

28 Police Department.  Ct. Rec. 1, ¶ 20.  Mr. Roby has admitted he has insufficient evidence

1  to sustain this claim.  Ct. Rec. 65, 20:10-14.  The City Defendants' Motion for Summary
2  Judgment is also **GRANTED** with respect to Mr. Roby's Fourth cause of action.
3  F.  State Law - *Respondeat Superior*
4      Mr. Roby's Sixth and final cause of action alleges that the City of Spokane is liable
5  based on the acts or omissions taken by its representatives, agents, or employees.  Ct.
6  Rec. 1, ¶ 22.  Given the court's finding of the existence of probable cause for Mr. Roby's
7  arrest, the only possible *respondeat superior* claim rests on Mr. Roby's Fifth cause of
8  action, his assault claim against Defendant Wilson.
9      Under the doctrine of *respondeat superior*, an employer may be liable for its
10 employee's negligence in causing injuries to third persons if the employee was within the
11 "scope of employment" at the time of the occurrence.  *Breedlove v. Stout*, 104 Wn.App.
12 67, 69 (2001).  The test for determining if an employee is acting in the scope of
13 employment is "whether the employee was, at the time, engaged in the performance of
14 the duties required of him by his contract of employment, or by specific direction of his
15 employer."  *Greene v. St. Paul-Mercury Indem. Co.*, 51 Wn.2d 569, 573 (1958). While
16 determining the scope of employment is normally a jury question, where there can be
17 only one reasonable inference from the undisputed facts, the issue may be resolved at
18 summary judgment.  *Breedlove*, 104 Wn.App. at 70 n. 5.
19     Nowhere in the pleadings has Mr. Roby alleged that Defendant Wilson was acting
20 within the scope of his employment when the alleged assault occurred.  The record
21 indicates that Defendant Wilson, though employed by the City of Spokane as a
22 firefighter, was not on duty or acting within the scope of his employment at the time of
23 the incident.  Accordingly, the City Defendants' Motion for Summary Judgment
24 regarding Mr. Roby's Sixth cause of action is **GRANTED**.
25 G.  Qualified Immunity
26     The City Defendants also move for summary judgment on all claims remaining
27 against Officers Gately and Waters, arguing that they are entitled to qualified immunity.
28 Ct. Rec. 35, 9:21-13:1.  The court does not reach the merits of this defense, as qualified

immunity analysis is unnecessary since there is no finding of the deprivation of Mr.
Roby's constitutional rights.

**IT IS HEREBY ORDERED:**

1.  The City Defendants' Motion for Dismissal/Summary Judgment (Ct. Rec. 33) is
**GRANTED**.

2.  Without specific court authorization, no reference shall be made in any
subsequent trial of the Roby claim against Wilson regarding the City of Spokane or City
Defendants prior status as Defendants in this case.

3.  Without specific court authorization, no reference shall be made in any
subsequent trial of the Roby claim against Wilson regarding the fact that any party was or
was not arrested, or any speculation regarding the reasons for such action or lack thereof.

4.  All claims against the City Defendants having been dismissed, those parties are
released from further filings in this court.

The Clerk is hereby directed to enter this Order, enter judgment of dismissal with
prejudice in favor of Defendants Gately, Waters, Van Tassel, Kirkpatrick and the City of
Spokane dismissing the Complaint and Claims One, Two, Three, Four, and Six of the
Complaint with prejudice and furnish copies to counsel.

**DATED** this 17th day of August, 2009.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 13